FILED ENTERED
LOGGED RECEIVED

NOV - 9 2011

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

Anica Ashbourne
7422 Drumlea Road
Capitol Heights, MD 20743
Phone Number: (240) 778-7712

ANICA ASHBOURNE, IN PRO PER

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division – Greenbelt)

| | |
|---|---|
| ANICA ASHBOURNE<br>7422 Drumlea Road<br>Capitol Heights, MD 20743<br><br>Plaintiff,<br><br>vs.<br><br>Timothy Geithner, Secretary<br>U.S. Department of the Treasury,<br>Internal Revenue Service (Global High Wealth), a component of the U.S. Department of the Treasury<br>1500 Pennsylvania Ave NW<br>Washington, DC 20220<br><br>Defendant | CIVIL ACTION NO: RWT 11 CV 3199<br><br>COMPLAINT |

## **COMPLAINT**

Plaintiff is a Tax Attorney/CPA. She has worked as a Chief Audit Executive for governmental entities, presided over administrative tax appeal hearings, and has earned political appointments. Her legal career spans twenty-eight years and it includes extensive experience in the areas of tax laws, auditing, and accounting. She was hired on June 21,

2010 as a Team Member in Global High Wealth but was fired on May 28, 2011 after Donna Hansberry (Director), Donna Prestia (Assistant Director), and Thomas Collins (Territory Manager) falsely accused her of lying[1] on her employment application.

In 2010, Global High Wealth had about 160 employees with less than 7 African-American auditors, none of whom were in management positions.

On September 30, 2011, Plaintiff filed a defamation lawsuit (Civil Action Case No. RWT-11-cv-2818) in this same court against these officials and she will be filing a discrimination lawsuit based on race and gender shortly[2].

Plaintiff is requesting that the court expedite her complaints in every way pursuant to 28 U.S.C. §1657(a).

Even though Plaintiff believes that her immediate supervisors treated her fairly throughout her employment, her problems with Global High Wealth's top officials began almost immediately.

In May 2010, Plaintiff negotiated her salary, but on her start date Ms. Prestia reduced that salary by almost $30,000. By that time, however, Plaintiff had purchased a home and had turned down other employment opportunities. Most importantly, in 2007, Plaintiff had rejected an offer from the IRS for a much higher position because it could not meet her $110,000 annual salary, and in 2008, Plaintiff's salary was $125,000 per year. Ms. Prestia's only explanation for this salary reduction was that Global High Wealth would not honor her negotiated salary agreement.

---

[1] See Exhibit 1 – Notice of Proposed Removal
[2] See Exhibit 2- EEO Complaint

Plaintiff was extremely angry, humiliated, offended, and insulted by this reduction and she informed Ms. Prestia that she would never have accepted this salary level when she was a highly-experienced Tax Attorney/CPA and a former Chief Audit Executive.

A few days after this conversation, Plaintiff was warned by another official that she would be fired by the end of the day if she could not name a person who could attest in writing as to Plaintiff's whereabouts on a specific day in 2001.

Plaintiff later discovered that she was the only employee in Global High Wealth who, *inter alia,* had been an executive of a governmental agency, had presided over administrative tax appeal hearings, had presented audit reports before elected officials at televised council and board meetings, and had published audit reports.

She also was the first to suggest that Global High Wealth focus its audit efforts on the "Foreign Tax Credit" and on "Material Participation".

Plaintiff almost single-handedly completed 50% of Global High Wealth's total audits in 2010. Despite her superior qualifications and contributions, Plaintiff earned the same mediocre ratings on her performance evaluations as younger, less experienced, and less qualified employees.

She maintains that, in order to terminate her[3], Ms. Hansberry, Ms. Prestia, and Mr. Collins deliberately violated her constitutional rights[4] and ignored state and federal laws[5], including the Internal Revenue Code. Moreover, Global High Wealth intentionally relied on adjudicators with inferior qualifications to assess Plaintiff's superior qualifications.

---

[3] See Exhibit 3 – Dismissal Letter
[4] *U.S. Department of the Treasury* v. *Grubka*, 858 F.2d 1570 (Fed.Cir.1988)
[5] See Exhibit 4 – Plaintiff's May 19, 2011 Response to Accusations

Ms. Hansberry is not a CPA, has never been an agency executive, and has no auditing or private sector experience. Ms. Prestia was a former actuary and has negligible income tax and auditing experience, and Mr. Collins has been an IRS auditor his entire career.

Although though they assumed responsibility for Plaintiff's adjudication, Ms. Hansberry, Ms. Prestia, and Mr. Collins do not meet even the minimum qualifications for an entry-level auditor position within Global High Wealth!

Most disturbing is the fact that these officials refuse to divulge their evidence which shows that Plaintiff's answers are untrue or that she purposely provided any false information in order to mislead these officials.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 29 U.S.C. §§621, 623, 633 *et seq.*, Age Discrimination in Employment Act of 1967(ADEA); 29 U.S.C. §206(d) (1), Equal Pay Act; Lilly Ledbetter Fair Pay Act 29; and, 28 U.S.C. §1331 as an action raising a federal question.

2. Venue in the United States District Court for the State of Maryland is proper under 5 U.S.C. §703 and 28 U.S.C. §1391(e), as the judicial district in which the plaintiff resides.

## PARTIES

3. Plaintiff Anica Ashbourne is a citizen of the United States and a resident of Capitol Heights, Maryland.

4. The IRS is a component of the U.S. Department of the Treasury and Global High Wealth is an industry group within the IRS.

## CAUSES OF ACTION - HOSTILE WORK ENVIRONMENT DUE TO DISPARATE TREATMENT AND/OR DISPARATE IMPACT IN VIOLATION OF 29 U.S.C. §§621

**et seq, 633a, AGE DISCRIMINATION IN EMPLOYMENT ACT; 29 U.S.C. §206(d) (1), EQUAL PAY ACT and the LILLY LEDBETTER FAIR PAY ACT.**

## FIRST COMPLAINT – DISCRIMINATORY COMPENSATION and BENEFITS PRACTICE

5. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a first complaint alleges:

6. Plaintiff is a 52-year old African-American female.

7. Her performance evaluation indicates that her work was more than satisfactory.

8. Similarly-situated (younger and/or male) employees outside of Plaintiff's protected age class ("Comparator Employees") were treated more favorably than Plaintiff because they earned the same salary as Plaintiff even though they had inferior qualifications, were uncredentialed, and/or less experienced than Plaintiff.

9. They qualify as "Comparator Employees" because they shared the same job title as Plaintiff, and their jobs required the same skills, efforts, responsibilities, and working conditions.

10. There were "Comparator Employees" who produced no functional work but were treated more favorably then Plaintiff because she earned equal pay for unequal work.

11. These "Comparator Employees" were unproductive for several months while Plaintiff continued to complete her work as well as their assignments too.

12. Global High Wealth's performance-related compensation and/or benefits plan was materially disadvantageous to Plaintiff because it rewarded "Comparator Employees" who produced no functional work.

13. Global High Wealth's discriminatory compensation plan and/or benefits plan significantly changed Plaintiff's terms, privileges, and conditions of her employment.

## Second Complaint – Work Assignments

14. Plaintiff complains of defendant by incorporating the above paragraphs and for a second complaint alleges:

15. "Comparator Employees" and the Plaintiff held jobs that required substantially equal skill, effort, and responsibility, and that were performed under similar working conditions.

16. However, Plaintiff had to complete her work assignments as well as the assignments of "Comparator Employees" because they lacked the required skills and did not exert the same effort in performing their job duties.

17. They were held to lower workplace standards than Plaintiff and were unproductive for several months.

18. Plaintiff bitterly complained about the unfair work load and about how "Comparator Employees" were allowed to take credit for her work.

19. "Comparator Employees" were treated more favorably than Plaintiff because the disparate work assignments were materially disadvantageous to her and changed the terms, conditions, and privileges of her employment.

## Third Complaint – Performance Evaluations

20. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a third complaint alleges:

21. "Comparator Employees" were treated more favorably than Plaintiff because they earned the same ratings on their evaluations as her despite their failure to produce any work and to demonstrate the required skill, effort, and responsibility called for in the position description.

22. “Comparator Employees” were treated more favorably than Plaintiff because their performance evaluations were based on Plaintiff’s work.

23. “Comparator Employees” were treated more favorably than Plaintiff because their opportunities for future promotions, transfers, and pay increases are based on these ratings.

24. “Comparator Employees” were treated more favorably than Plaintiff because although they were indolent for several months they suffered no adverse employment actions.

25. “Comparator Employees” were treated more favorably than Plaintiff because she had to produce superior work and carry a heavier workload just to earn the same ratings as unproductive and less qualified employees.

26. The performance evaluation system was materially disadvantageous to Plaintiff because it offered better privileges, terms, and conditions of employment to “Comparator Employees”.

**Fourth Complaint – Timekeeping and Recordkeeping Rules**

27. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a fourth complaint alleges:

28. “Comparator Employees” were treated more favorably than Plaintiff because they accessed federal taxpayer identification numbers to falsify their employee time sheets and activity reports, without suffering any adverse employment actions.

29. “Comparator Employees” were treated more favorably than Plaintiff because they did not have to accurately document how they spent their time.

**Fifth Complaint – Discriminatory Termination**

30. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a fifth complaint alleges:

31. "Comparator Employees" were treated more favorably than Plaintiff because they were provided opportunities to meet with IRS employees to defend themselves against false accusations and to discuss their employment histories.

32. Plaintiff was intentionally denied any opportunities to meet with IRS employees to discuss her sole proprietorship or her work history.

33. Ms. Hansberry, Ms. Prestia, and Mr. Collins, in order to accuse Plaintiff of lying about her sole proprietorship and a 2001 temporary position, have intentionally ignored state and federal laws[6], including the Internal Revenue Code, and the overwhelming evidence in and/or on Plaintiff's employment application, her resume', her income tax returns, and the investigator's background report.

34. "Comparator Employees" were treated more favorably than Plaintiff because they were not subject to any adverse employment actions despite instances of misconduct.

**Sixth Complaint – Adjudicatory Process**

35. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a sixth complaint alleges:

36. Plaintiff's personnel file contains both defamatory and erroneous information. There are more than 40 errors in her personnel file.

37. The defamatory and erroneous information has been disclosed by Global High Wealth to other hiring officials within the IRS.

38. Federal agencies share personnel files.

---

[6]See Exhibit 1– Plaintiff's May 19, 2011 Answer

39. Therefore, Plaintiff's file has been released or will be released to other federal agencies and to entities outside of the federal government in response to her application for employment with those agencies.

40. The defamatory information has also been disclosed to agencies outside of the federal government.

41. And, members of the public will have access to the defamatory and erroneous information under the Freedom of Information Act.

42. "Comparator Employees" were treated more favorably than Plaintiff because they have not suffered reputational damage or had certain employment opportunities foreclosed to them because of stigmatizing and defamatory information circulated about them by Global High Wealth officials.

43. "Comparator Employees" were treated more favorably than Plaintiff because they did not have to endure employees, who were convinced that the defamatory information was indeed true, opening discussing the defamatory information about Plaintiff with other employees weeks before her discharge.

44. "Comparator Employees" were treated more favorably than Plaintiff because they were adjudicated by individuals with either equal or inferior qualifications.

45. Plaintiff was disadvantaged by having younger, inexperienced, and unqualified adjudicators assess her superior qualifications and work experience.

**Seventh Complaint – Hostile Work Environment**

46. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein and for a seventh complaint alleges:

47. Plaintiff experienced unwelcome harassment because of her race and age.

48. Plaintiff experienced unwelcome harassment because of her gender and age.

49. Plaintiff experienced unwelcome harassment that was so severe and pervasive that it altered the original privileges, terms, and conditions of her employment.

50. Plaintiff experienced unwelcome harassment that was so severe and pervasive that it created an abusive and hostile work environment.

51. Global High Wealth's officials did nothing to prevent or promptly correct any harassing behavior because they created the abusive environment.

52. Plaintiff was extremely humiliated, offended, and insulted when she, a former Chief Audit Executive, was notified on her start date that Global High Wealth's top officials would not respect her negotiated salary agreement.

53. By refusing to recognize her superior qualifications and years of experience, these officials paid her the same wages as its younger and inexperienced employees.

54. Plaintiff was extremely humiliated, offended, and insulted when she became aware that one of Global High Wealth officials allegedly called her co-worker, a woman who sat in front of her, "N-word and continued to engage in a pattern of harassment against that employee.

55. Plaintiff was extremely humiliated, offended, and insulted when she became further aware that for months Donna Hansberry, who supervised both of the above employees, refused to take immediate remedial action against the above-mentioned official.

56. Weeks before her discharge, Plaintiff experienced extreme humiliation, offense, and insult when she became aware that defamatory information about her had been improperly disclosed and that employees were openly discussing her pending termination.

57. Plaintiff experienced extreme humiliation, offense, and insult when she had to produce several months of analytical work papers and legal research while "Comparator Employees" were not subject to the same work requirements.

58. Plaintiff experienced extreme humiliation, offense, and insult when her work was later distributed to "Comparator Employees" who then took credit for it.

59. Plaintiff experienced extreme humiliation, offense, and insult when she received the same ratings on her performance evaluations as "Comparator Employees".

60. Plaintiff was extremely humiliated, offended, and insulted when Global High Wealth's top officials ignored her superior qualifications and her years of work experience to provide better employment opportunities, terms, and conditions to "Comparator Employees".

61. Plaintiff was extremely humiliated, offended, and insulted when she discovered that "Comparator Employees" had been provided opportunities to meet with IRS employees to discuss their past employment while Plaintiff was denied those same "name-clearing" opportunities.

62. Plaintiff was extremely offended when she discovered that, even though her computer use and timesheets were closely monitored, "Comparator Employees" were allowed to access taxpayers' federal employer identification numbers to falsify their employee time sheets and activity records without any repercussions for doing so.

WHEREAS, PLAINTIFF REQUESTS THAT SHE HAVE JUDGEMENT AGAINST THE DEFENDANT AS FOLLOWS:

i. Order agency to divulge status of Plaintiff's suggestions she made through the agency's "Employee Suggestion Program" and whether she is entitled to any reward monies;

ii. Award double back pay, compensatory damages, liquidated damages, front pay, and actual damages;

iii. Order agency to expunge personal file of inaccurate, incomplete, irrelevant, untimely, and/or defamatory information;

iv. Refer Ms. Hansberry to the state bar for disbarment, if there is a finding of intentional and willful misconduct;

v. Refer Ms. Prestia and Mr. Collins to the state boards of accountancy for revocation of their CPA licenses, if there is a finding of intentional and willful misconduct;

vi. Order her reinstatement to include a promotion award at her original post-of-duty but to a position that is not within Global High Wealth;

vii. Restore her negotiated salary until the effective date of her promotion award;

viii. Order the Merit Systems Protection Board to issue Plaintiff's July 29, 2011 Initial Decision under an assumed name;

ix. Injunctive relief against retaliation;

x. Order agency to redact the ratings on her Performance Evaluations; and,

xi. Award any other relief that the Court finds appropriate.

DATED: November 8, 2011

ANICA ASHBOURNE
In Pro Per